# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON WAYNE KIDD, | ) | CASE NO. 1:13-CV-02224 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Jefferson Wayne Kidd ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed his application for POD and DIB on April 5, 2006, alleging a disability onset date of September 12, 2001.  (Transcript ("Tr.") 11.)  The application was denied initially, on reconsideration, and in a decision by Administrative Law Judge ("ALJ") Bunce on March 20, 2008.  (*Id.*)  Plaintiff requested review of the decision by the Appeals Council, and on September 17, 2009, the Appeals Council remanded the decision to ALJ Bunce for further administrative proceedings.  (*Id.*)  Following a hearing, ALJ Bunce issued an unfavorable decision on September 10, 2010.  (*Id.*)  Plaintiff again requested review of the

decision by the Appeals Council, and on November 29, 2012, the Appeals Council remanded the decision for further administrative proceedings. (*Id.*) On April 18, 2013, ALJ Andreas held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) At the hearing, Plaintiff, through his attorney, amended his alleged onset date to September 30, 2007. (*Id.*) On June 14, 2013, the ALJ found Plaintiff not disabled. (Tr. 8.) On August 20, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On October 8, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 18, 19.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in failing to comply with the Appeals Council's November 29, 2012, remand order; and (2) the ALJ posed an inaccurate hypothetical question to the VE because the question omitted any mention of Plaintiff's need for a cane.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in March 1960 and was 48-years-old on the date last insured. (Tr. 17.) He had at least a high school education and was able to communicate in English. (*Id.*) He had past relevant work as a boat builder and bartender. (*Id.*)

### B. Medical Evidence

#### 1. Medical Reports

Plaintiff sustained a fractured left ankle and tibia and several crushed discs in his

low back in a 1980 motor vehicle accident. (Tr. 599.)

On July 11, 2005, an x-ray of Plaintiff's left ankle showed sclerosis of the talus. (Tr. 606.) An x-ray of his lumbosacral spine revealed a wedge deformity at T12 (indicating a compression fracture) and possible compression fracture of the superior endplate of L4. (Tr. 607.) That same day, Naomi Waldbaum, M.D., performed a consultative examination of Plaintiff. (Tr. 599-601.) Plaintiff complained of pain and other symptoms in his left ankle, knees, back, neck, and right shoulder/arm. (Tr. 599.) He stated that he had stopped working in 2001 after being laid off. (*Id.*) Plaintiff informed Dr. Waldbaum that he is able to drive, take care of his personal grooming, bathe, and complete other simple activities. (Tr. 600.)

On examination, Plaintiff walked with an obvious limp on his left side, revealing atrophy of the left lower extremity. (*Id.*) Plaintiff did not require an assistive device and his gait was stable. (*Id.*) He could not heel or toe walk, but he could stand independently. (*Id.*) He dressed/undressed, got on and off the couch, and performed all maneuvers for the evaluation in an essentially functional and non-antalgic manner. (*Id.*) He had difficulty squatting and displayed some right thumb and foot numbness. (*Id.*) Plaintiff could flex, extend, and rotate his lumbar spine normally. (*Id.*) Plaintiff also displayed normal cervical movements. (*Id.*) Aside from his right thumb, Plaintiff's arms maintained normal reflexes and sensation. (*Id.*) He could put his hands behind his back and behind his head in a functional manner. (*Id.*) Similarly, Plaintiff retained normal sensation in his legs except for his right foot. (*Id.*) Sitting hip flexion and knee extension was normal bilaterally. (*Id.*) Plaintiff had normal strength in his quadriceps. (*Id.*) He demonstrated trace range of motion in his left ankle, but normal range of motion in his right ankle. (*Id.*) Dr.

3

Waldbaum's evaluation of Plaintiff's hips and knees was normal except for clicking noted in the left knee on ranging. (*Id.*) Plaintiff's straight leg raising test results were normal bilaterally. (*Id.*) Plaintiff could turn from the supine to prone position in a functional manner. (*Id.*) He had no discomfort with palpation to his spine or sacroiliac joint. (Tr. 601.)

Dr. Waldbaum described Plaintiff as "medically healthy" and "very functional." (*Id.*) He noted that despite Plaintiff's significant left-sided limp and trace range of motion in his left ankle, Plaintiff "could perform many different types of work activities" but "would have difficulty with a significant amount of standing and climbing." (*Id.*)

On February 28, 2006, Plaintiff presented to Ashtabula County Medical Center with complaints of headaches and neck, back, and right wrist pain after being in a motor vehicle accident the previous day. (Tr. 612-618.) An x-ray of Plaintiff's lumbar spine showed compression fractures of an indeterminate age at T12 and L4. (Tr. 614-615.) An x-ray of Plaintiff's cervical spine showed intact/maintained structures and no fractures or sublaxations. (Tr. 616.) On examination, Plaintiff appeared alert and oriented. (Tr. 618.) He had intact cranial nerves. (*Id.*) His neck was tender and supple. (*Id.*) Despite lumbar tenderness, Plaintiff remained neurovascularly intact. (*Id.*) He exhibited no pinpoint tenderness or swelling in his right wrist. (*Id.*) His motor and sensory functions were normal. (*Id.*)

On March 8, 2006, Plaintiff presented to John Posch, M.D., regarding symptoms related to his February 27, 2006, vehicle accident. (Tr. 619-620.) Dr. Posch noted that Plaintiff "is currently in the process of applying for disability for chronic back problems, which has nothing to do with the accident in question." (Tr. 619.) Plaintiff complained of

4

left shoulder and clavicle pain.  (*Id.*)  Dr. Posch found that Plaintiff had full range of motion in the shoulder with some discomfort when elevating his left arm.  (*Id.*)  Plaintiff had slightly limited range of motion in his spine.  (*Id.*)  He diagnosed Plaintiff with cervical and lumbar strains and a history of compression fractures at T12 and L4.  (*Id.*)  Dr. Posch advised Plaintiff to "gradually resume normal activities as he feels better over the next several weeks."  (*Id.*)

On March 16, 2006, Plaintiff saw Gregory C. Brant, D.O. (Tr. 648-650.)  On examination, Plaintiff had decreased rotation, but full flexion and extension in his cervical spine.  (Tr. 650.)  He had pain and/or spasms in various portions of his back.  (*Id.*)  Plaintiff visited Dr. Brant on multiple occasions through September 2006, complaining of musckuloskeletal pain and/or other symptoms.  (Tr. 624-640, 642-643, 645-647, 653-654.)  On June 6, 2006, Dr. Brant prescribed Plaintiff a cane.  (Tr. 662.)

On April 3, 2006, an MRI of Plaintiff's cervical spine showed only minimal disc bulges at the C4 and C6 levels without focal disc herniation or cord compression.  (Tr. 623.)  An April 12, 2006, x-ray of Plaintiff's thoracic spine was negative.  (Tr. 622.)

On November 6, 2006, Dr. Brant completed a Pain Questionnaire wherein he opined that Plaintiff could not sustain any kind of work activity without frequent stops.  (Tr. 656.)  That same day, Dr. Brant also completed a Medical Assessment of Ability to Do Work-Related Activities (Physical).  (Tr. 657-658.)  He indicated that Plaintiff could lift/carry a maximum of 20 pounds, but could only lift/carry 10 pounds occasionally and 5 pounds frequently.  (Tr. 658.)  Dr. Brant further stated that Plaintiff could stand/walk at half-hour intervals for up to two hours in an eight-hour workday.  (*Id.*)  Plaintiff could sit at half-hour intervals for a total of four hours in an eight-hour workday.  (*Id.*)  In addition, Dr. Brant

opined that Plaintiff could never perform postural activities except for kneeling, which could be done occasionally. (Tr. 657.) He also suggested that Plaintiff could perform no physical functions aside from pushing/pulling. (*Id.*) He opined that Plaintiff needed to avoid heights, moving machinery, temperature extremes, humidity, and vibration, and that Plaintiff would be absent more than three times per month. (Tr. 657.)

Plaintiff returned to Dr. Brant on February 8, 2008, with complaints of back pain and right arm numbness. (Tr. 660.) On April 8, 2008, Dr. Brant wrote Plaintiff an excuse for jury duty wherein he stated that Plaintiff could not sit for prolonged periods due to his cervical and lumbar degenerative joint disease and degenerative disc disease. (Tr. 688.)

On March 15, 2011, Dr. Brant wrote a "To Whom It May Concern" letter to Plaintiff's Social Security disability attorney wherein he opined that Plaintiff had "long term disability since the date 09/30/2007." (Tr. 698.)

### 2. Agency Reports

On October 11, 2005, Cindi Lynn Hill, M.D., a state agency physician, reviewed the evidence of record and opined that Plaintiff did not have a severe physical impairment. (Tr. 608-609.)

### C. Hearing Testimony

### 1. Plaintiff's Hearing Testimony

Plaintiff testified that he had difficulties with his left ankle, knees, back, neck, and left shoulder. (Tr. 53-58.) His left ankle, back, and neck caused the most problems. (Tr. 58.) Plaintiff stated that he had been prescribed a cane three or four years earlier, which he needed for walking distances more than 20 or 30 feet and for standing for long periods of time. (Tr. 55-56.) Plaintiff testified that he could stand for approximately one hour without

holding on to anything. (Tr. 64.) He described his pain on a daily basis: "I can't motivate–I get sharp pains in my back. My left ankle is stiff. I don't have but maybe ten percent mobility in it. My neck gets so stiff that I can't turn my head or anything, and that's constant–I mean, that's like that all the time. At times my right arm just totally goes numb. It feels like I'm having a heart attack. I mean, I just pretty much got to just lay down and relax." (Tr. 58.) Plaintiff stated that on a typical day, he watched TV, napped, and played video games. (Tr. 58-59.) He did not require assistance with dressing or bathing. (Tr. 59.)

## 2. Vocational Expert's Hearing Testimony

Brett Salkin, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 70.) The individual would be capable of performing work at the sedentary level and could lift and carry a maximum of 20 pounds with 10 pounds occasionally and less than that frequently. (Tr. 71-72.) The individual could stand and walk for two hours in an eight hour day and one half hour at a time, and sit for six hours in an eight hour day and four hours at a time. (Tr. 72.) The individual would have no limitations in reaching, handling feeling, seeing, or speaking; could frequently push and pull; could occasionally climb, balance, stoop, and crouch but could not kneel or crawl; and must avoid heights, moving machinery, extreme temperatures, humidity, and vibration. (Tr. 72.) The VE testified that the hypothetical individual would be capable of performing such jobs as a food and beverage clerk, a bench assembler, and a charge account clerk. (Tr. 71-72.)

The ALJ asked the VE whether the hypothetical individual previously described would be capable of performing jobs that exist in significant numbers in the national

economy if the person needed a cane for ambulating more than 30 feet. (Tr. 75.) The VE responded that the individual would be capable of performing the jobs he named. (Tr. 76.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§

8

404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from his amended onset date of September 30, 2007, through his date last insured of September 30, 2008.

3. Through the date last insured, the claimant had the following severe impairments: history of left ankle injury/sclerosis of the left ankle, degenerative disc disease/degenerative joint disease of the cervical and lumbar spines with history of compression fractures at T12 and L4.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work with lifting and carrying a maximum of 20 pounds with 10 pounds occasionally and less than that frequently, standing and walking for two hours in an eight hour day and one half hour at a time, sitting for six hours in an eight hour day and four hours at a time, no limitations in reaching, handling, feeling, seeing, or speaking, frequent pushing and pulling, occasional climbing, balancing, stooping, and crouching but no kneeling or crawling, must avoid heights and moving machinery, extreme temperatures, humidity, or vibration.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born in March 1960 and was 48-years-old, which is

> defined as a younger individual age 18-44, on the date last insured.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 12, 2001, the alleged onset date, through September 30, 2008, the date last insured.

(Tr. 13-19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the

ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

#### 1. The ALJ Erred in Failing to Comply with the Appeals Council's November 29, 2012, Remand Order.

On November 29, 2012, the Appeals Council vacated the September 10, 2010, hearing decision of ALJ Bunce and remanded the case for further consideration by a new ALJ. (Tr. 164.) The Appeals Council directed the ALJ on remand to take certain action, including the following:

1. Include all pertinent evidence of record in the exhibits, including third party reports submitted prior to the issuance of the ALJ's decision;

2. Provide a proper evaluation of Plaintiff's subjective complaints and symptoms in accordance with SSR 96-7p with regard to his credibility;

3. Obtain supplemental evidence from a VE, particularly with regard to the limiting effects of Plaintiff's use of a cane.

(Tr. 165-166.)

Plaintiff argues that the ALJ erred by failing to resolve the issues above on remand. The Court will address each issue in turn.

#### a. Third Party Statements

The Appeals Council ordered the ALJ to consider and include in the evidence third

11

party statements from individuals who were familiar with Plaintiff's impairments. (Tr. 164.) The Appeals Council explained:

> One document was submitted to the electronic file before the hearing decision was issued that was not discussed in the decision and not properly marked or exhibited as required by HALLEX I-2-1-20. The evidence includes third party statements from individuals who indicate they are familiar with the claimant's impairments. There are letters form the claimant's brothers, Garry Kidd, Charles Kidd, and Larry Kidd; the claimant's friend Clarence Peyatt; the claimant's mother, Darleen Kidd; and the claimant's wife, Jane E. Obhof. This evidence must be considered and included in the record in accordance with HALLEX I-2-1-20.

(*Id.*) Plaintiff maintains that the ALJ erred by failing to accurately account for the third party statements of Plaintiff's condition offered by Plaintiff's friends and family members. As an initial matter, the Appeals Council merely directed the ALJ to consider the third party statements and include them as exhibits, and the ALJ complied with this order. The Appeals Council did not, as Plaintiff suggests, require the ALJ to discuss the third party opinions in his hearing decision or explain the weight given to them.

Moreover, the ALJ did not err in his treatment of the third party statements. While he did not discuss the opinions at length in his hearing decision, he did include them as exhibits in the record and acknowledged that he considered them, noting: "Little weight is also given to the third party statements completed by the claimant's mother, brothers and friends because they are not medical professionals and they are biased towards the claimant due to the nature of their relationship with him." (Tr. 17.) Social Security Ruling 06-03p explains that when considering evidence from non-medical sources who have not seen the claimant in a professional capacity, the ALJ should "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that

tend to support or refute the evidence."  SSR 06-03P (S.S.A., Aug. 9, 2006).    There is no requirement that the ALJ discuss the opinions in great detail or offer good reasons for rejecting them.  Here, the ALJ noted that he considered the statements but assigned them limited weight given the fact that the opinions were rendered by non-medical professionals who were either related to or close friends with Plaintiff.  (Tr. 17.)  This is sufficient to satisfy the regulations.

Furthermore, as the Commissioner notes in her Brief on the Merits, even if the ALJ's assessment of the third party opinions was erroneous, the error would be harmless, as Plaintiff has failed to identify how the outcome of his case would be different if the ALJ had assigned great weight to the third party statements. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)).  *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n.6 (1969)).  Accordingly, the ALJ did not error in his consideration of the third party statements.

### b.  Plaintiff's Credibility

The Appeals Council directed the ALJ on remand to provide a proper evaluation of Plaintiff's pain and credibility.  According to Plaintiff, the ALJ failed to do this.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health*

13

*& Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence, including six

14

different factors.[1]  See Felisky, 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors.  Bowman v. Chater, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's condition.  (Tr. 14-17.)  The ALJ examined Plaintiff's daily activities, his treatments and his responses to those treatments, the clinical examination findings, and the physician statements of record.  (Id.)  Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's physical limitations, the ALJ noted that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not *entirely* credible.  (Tr. 16.)  The ALJ explained:

> The claimant's minimal findings on radiographic studies and relatively normal physical examination with the exception of decreased range of motion, muscle strength and reflexes of his left lower extremity with muscle atrophy and a limp on the left

---

[1] These factors include the following:
 (1) the claimant's daily activities;
 (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
 (3) precipitating and aggravating factors;
 (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
 (5) treatments other than medication that the claimant has received to relieve the pain; and
 (6) any measures that the claimant takes to relieve his pain.

>> indicate that the claimant has a condition which would reasonably be expected to cause pain but only to the extent that it would limit him to a range of sedentary work.

(*Id.*) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that his RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence. In finding that Plaintiff was capable of performing a limited range of sedentary work despite his limitations, the ALJ discussed the following evidence:

- "At the consultative exam performed by Dr. Waldbaum, the claimant had some clicking of the left knee and muscle atrophy of the left lower extremity but the examination of the left knee/tibia was otherwise normal. Patient notes from Gregory Brant, D.O. do not indicate treatment of the claimant's left knee/tibia."  (Tr. 14.)

- The ALJ noted that Plaintiff alleged left should pain and numbness, but at the consultative exam performed by Dr. Waldbaum, she noted that Plaintiff had normal range of motion of the left shoulder with normal muscle strength, normal reflexes, and normal sensation. (Tr. 14.)

- Dr. Waldbaum noted on examination that Plaintiff had normal range of motion of the cervical and lumbar spines. (Tr. 16.) Plaintiff demonstrated normal reflexes in the upper extremities, knees, and right ankle. (*Id.*) He had normal sensation with the exception of some diminished sensation in the right thumb and right foot.  Muscle strength was normal at 5/5 except that it was trace in the left foot. (*Id.*) Plaintiff had an abnormal gait with a significant limp on the left but was able to toe-walk or heel-walk on the left. (*Id.*)

- Records from Dr. Brant show that Plaintiff has been prescribed Vicodin, Flexeril, and Lyrica for treatment of his pain complaints and was also treated with chiropractic manipulation in the past. (Tr. 16.) Dr. Brant prescribed Plaintiff a cane on June 2, 2006. (*Id.*)

Thus, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record and found that Plaintiff's subjective complaints were not entirely consistent with the objective evidence. This inconsistency is an appropriate basis for an adverse credibility

16

finding.  *See* [Walters v. Comm'r of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)](#) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")  For the foregoing reasons, the ALJ adequately conducted a proper pain and credibility analysis as directed by the Appeals Council.

### c. Plaintiff's Use of a Cane

The Appeals Council directed the ALJ on remand to obtain supplemental evidence from a VE with regard to the limiting effects of Plaintiff's use of a cane.  (Tr. 165.)  Plaintiff argues that the ALJ failed to do so.  Plaintiff also argues, in his second assignment of error, that the ALJ posed an inaccurate hypothetical question to the VE because the question omitted any mention of Plaintiff's cane usage.  Plaintiff's arguments are not well taken.

On June 6, 2006, Dr. Brant prescribed Plaintiff a cane.  (Tr. 662.)  At his hearing, Plaintiff testified that he needed his cane for walking distances of more than 20 or 30 feet and for standing for long periods of time.  (Tr. 55-56.)  He stated that he did not use his case for things like "getting off the couch and going to the bathroom."  (Tr. 56.)  Plaintiff further testified that he could stand for approximately one hour without holding on to anything. (Tr. 64.)  When questioning the VE, the ALJ specifically asked whether an individual with Plaintiff's RFC would be capable of performing the jobs of a food and beverage clerk, a bench assembler, and a charge account clerk if the person needed a cane for ambulating more than 30 feet.  (Tr. 75.) The VE responded that the individual would be capable of performing such jobs. (Tr. 76.) Thus, contrary to Plaintiff's assertion, the ALJ did comply with the Appeals Council's order to obtain supplemental evidence from a VE with regard to the limiting effects of Plaintiff's use of a cane.  The VE specifically stated that Plaintiff would be capable of performing the jobs

17

named despite the fact that he needed to use his cane to walk distances of more than 30 feet, and the ALJ relied on this testimony in making his Step Five finding. (Tr. 18.)

While Plaintiff now maintains that the VE's testimony is inadequate to establish that Plaintiff can perform certain sedentary jobs even though he requires a cane, Plaintiff's counsel did not challenge the validity of the VE's testimony on the subject at Plaintiff's hearing. The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Regulation 00-4p, because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). "The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.*; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late."). *But see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations). Upon direct questioning by the ALJ, the VE testified that an individual who required a cane to ambulate distances of more than 30 feet–a limitation Plaintiff specifically described during his hearing testimony–could perform work that exists in significant numbers in the national economy. Plaintiff's counsel did not seek further clarification of the VE's testimony, and Plaintiff fails to explain how this testimony is an inadequate basis for the ALJ's determination. Accordingly, Plaintiff's arguments regarding his use of a cane do not present a basis for remand of his case.

18

      **2.**      **The ALJ Posed an Inaccurate Hypothetical Question to the VE Because the Question Omitted Any Mention of Plaintiff's Need for a Cane.**

The Court has sufficiently addressed Plaintiff's second assignment of error in its discussion of Plaintiff's first assignment of error.  *See supra* pp. 17-18.  For the reasons stated above, Plaintiff's second assignment of error does not require remand.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                              s/ *Nancy A. Vecchiarelli*
                                              U.S. Magistrate Judge

Date: December 17, 2014